23-7957
*Estate of Kalikow v. Commissioner of Internal Revenue*


UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT


SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of March, two thousand twenty-five.

PRESENT:
> JOSÉ A. CABRANES,
> RICHARD C. WESLEY,
> STEVEN J. MENASHI,
> > *Circuit Judges.*

_____

ESTATE OF PEARL B. KALIKOW, DECEASED,
EUGENE SHALIK, EXECUTOR,

> *Petitioner,*

EDWARD M. KALIKOW AND LAURIE K. PLATT,
LIMITED ADMINISTRATORS,

> *Petitioners-Appellants,*

> v.                                                                    23-7957

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*[*]

_____

FOR PETITIONERS-APPELLANTS: KEVIN M. FLYNN, Kostelanetz LLP, New York, NY

FOR RESPONDENT-APPELLEE: JULIE CIAMPORCERO AVETTA (Ellen Page DelSole, *on the brief*), for David A. Hubbert, Deputy Assistant Attorney General, Tax Division, Department of Justice, Washington, DC

Appeal from a judgment of the United States Tax Court (Michael B. Thornton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the Tax Court is **AFFIRMED**.

This appeal focuses on the consequences of including in the taxable estate of Decedent Pearl Kalikow, both the assets of a qualified terminable interest property trust ("QTIP trust") and a $6,572,310 settlement that resolved a claim by the estate against the trust. Petitioners-Appellants Edward M. Kalikow and Laurie K. Platt ("Petitioners") and Respondent-Appellee Commissioner of Internal Revenue ("Commissioner") cross-moved for partial summary judgment. The parties disputed the "settlement payment's effect, if any, on the value of the [trust's] assets included in decedent's gross estate." *Est. of Kalikow v. Comm'r of Internal Revenue*, T.C.M. (RIA) 2023-021, 2023 WL 2234426, at *5

---

[*] The Clerk of Court is respectfully directed to amend the caption accordingly.

2

(Feb. 27, 2023). The Tax Court granted the Commissioner's motion and denied the Petition, concluding that the settlement liability did not reduce the value of the assets of the trust included in Pearl's estate. *See id.* at *1. Petitioners appeal from the Tax Court's grant of summary judgment. We affirm.

## BACKGROUND

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision.

This appeal involves two portions of Pearl's estate: (1) a QTIP trust's assets—primarily ten income-earning rental properties; and (2) a $6,572,310 settlement payment, owed to Pearl's estate from the QTIP trust to remedy its trustees' failure to distribute all of the trust's net income to Pearl during her lifetime.

### I.     The SK Trust

Sidney Kalikow, Pearl's husband, predeceased her. Petitioners are Sidney and Pearl's children. Sidney's will made Pearl the beneficiary of a trust that consisted primarily of ten income-earning rental properties (the "SK Trust"). Sidney's will directed the trustees of the SK Trust to pay the Trust's net income to Pearl, at least quarterly, during her life. Pursuant to the terms of Sidney's will, upon Pearl's death, the SK Trust terminated, and the remaining property was distributed evenly between two trusts for the benefit of Petitioners (the "Children's Trusts").

3

Sidney's executors elected to treat the ten properties passing to Pearl pursuant to the terms of the SK Trust as a QTIP trust and claimed a marital deduction for it.[1] Because of the SK Trust's designation as a QTIP trust by Sidney's estate, the transfer of the ten properties was not subject to an estate tax at the time of Sidney's death. However, as a result, those ten properties had to be taxed as part of Pearl's estate upon her death. *See* 26 U.S.C. § 2044(a)-(b)(1)(a).

The trustees subsequently reorganized the property interests in the SK Trust. They transferred title in the ten properties to Kalikow Family Partnership, LP ("KFLP"); the SK Trust ended up with a 98.5% interest in KFLP.[2]

Upon Pearl's death, the SK Trust consisted of the 98.5% interest in KFLP and $835,000 in "cash and marketable securities." The parties have stipulated that the 98.5% interest in KFLP on the date of Pearl's death was worth $54,492,712.

By operation of 26 U.S.C. § 2207A(a) and the terms of Pearl's will, the estate tax on the KFLP partnership interest and the cash and marketable securities must be paid by the SK Trust. Pearl's will bequeathed the residue of her estate to the Sunshine Foundation.

---

[1] A QTIP trust is created at the time of decedent's death. The res of the trust is made up of property from decedent's estate. The QTIP trust provides the surviving spouse a "qualifying income interest for life" in that property. *See* 26 U.S.C. § 2056(b)(7).

[2] Other entities held the remaining 1.5%: Kalikow Management, Inc. held 1% as the general partner of KFLP and the Sidney and Pearl Kalikow Foundation held 0.5%.

## II. The Undistributed Income Claim And Settlement Payment

During Pearl's probate proceedings, a dispute arose regarding the trustees' failure to distribute the full amount of income generated from the KFLP partnership to which Pearl was entitled. Ultimately, the parties agreed that a payment of $6,572,310 "in readily available funds" from the SK Trust to Pearl's estate would resolve the claim. They further agreed that the SK Trust and the Children's Trusts "shall be jointly and severally liable for the Settlement Payment." In addition, Pearl's children represented and guaranteed that the assets of the SK Trust and their respective trusts were sufficient to cover the settlement and that in the event the liquid assets of the three trusts proved insufficient, "Kalikow and Platt shall fund the [SK Trust and the Children's Trusts] with assets of sufficient value."

The effect of that settlement has become the centerpiece of the proceedings before the Tax Court and of this appeal. After the Commissioner asserted an estate tax deficiency against the estate, Petitioners and the executor challenged different aspects of the deficiency. As relevant here, Petitioners challenged the Commissioner's valuation of the SK Trust. The Tax Court stayed proceedings pending the Surrogate's Court's resolution of the undistributed income claim. After the settlement was reached, the parties cross-moved for summary judgment. Petitioners "assert[ed] that (1) the value of the SK Trust assets included in the estate pursuant to [26 U.S.C. §] 2044 is properly reduced by the agreed-upon undistributed income amount," or, alternatively, (2) the

5

amount of the claim is "deductible from the gross estate as administration expenses under [26 U.S.C. §] 2053." *Est. of Kalikow*, 2023 WL 2234426, at *5. The Tax Court found both theories of reducing the estate's tax liability to be without merit. *Id.* at *7, 9. The Tax Court ordered payment of the net tax deficiency of $3,653,939.

## DISCUSSION

### I. The SK Trust Is Not An Asset Of Pearl's Estate

The taxable estate comprises the decedent's "gross estate" minus deductions, such as charitable bequests or administrative expenses. *See* 26 U.S.C. §§ 2031, 2033, 2053, 2055. The gross estate includes the "fair market value" of the decedent's property "at the time of the decedent's death," which is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." 26 C.F.R. § 20.2031-1(b).

Petitioners argue that the Tax Court should have reduced the value of the assets in the SK Trust that are included in Pearl's estate by the Trust's $6,572,310 liability to Pearl's estate.[3] But, Petitioners offer no reason to support their contention that the liability—a putative claim at the time of Pearl's death—affected the fair market value of the SK Trust's assets on the date of Pearl's death.

---

[3] This Court reviews *de novo* the Tax Court's grant of summary judgment. *Williams v. Comm'r*, 718 F.3d 89, 91 (2d Cir. 2013).

6

First, the SK Trust is a separate legal entity that is not itself an asset of the estate.[4] It is an instrument that organized and administered property during Pearl's lifetime and then transferred that property to her heirs. But the Trust itself is not property of the estate; a liability that belongs to the Trust but does not affect the value of the underlying assets would not alter the value of the gross estate.

Second, the terms of the settlement demonstrate that the liability did not affect the fair market value of the assets in the SK Trust. The liability of the SK Trust did not encumber the assets held in the SK Trust. A hypothetical purchaser of the largest asset in the SK Trust—the KFLP partnership—would not accede to the liability and therefore would not regard the liability as affecting the price of the asset. *Cf. Connelly v. United States*, 602 U.S. 257, 260, 264 (2024). Indeed, the parties stipulated that the value of the KFLP partnership interest was $54,492,712, and Petitioners knew of the undistributed income claim at the time they stipulated to that value. Petitioners cannot now "argue for some lesser value of this asset," *Est. of Kalikow*, 2023 WL 2234426, at *7. In fact, the settlement agreement acknowledged payment with "readily available funds" of the SK

---

[4] *See* 26 C.F.R. § 301.7701-4 ("In general, the term 'trust' as used in the Internal Revenue Code refers to *an arrangement* created either by a will or by an inter vivos declaration *whereby trustees take title to property* for the purpose of protecting or conserving it for the beneficiaries under the ordinary rules applied in chancery or probate courts.") (emphasis added); Restatement (Third) of Trusts § 2 (Am. L. Inst. 2003) ("A trust . . . is *a fiduciary relationship* with respect to property, *arising from a manifestation of intention to create that relationship* and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons.") (emphasis added).

Trust without liquidating the ten properties that comprise the KFLP partnership interest. There was no expectation that the properties would be affected. Because the liability does not affect the value of the underlying assets, it could not be included in the gross estate.

Thus, there is no basis upon which to diminish the value of the assets included in the gross estate by the amount of the undistributed income claim.

## II. No Error In Denying Administration Expense Deduction

In the alternative, Petitioners contend that the Tax Court erred when it denied Petitioners' request for the estate's tax return to include an administration expense deduction pursuant to 26 U.S.C. § 2053(b) for the amount of the settlement payment. We conclude that the Tax Court did not err.

As explained, the entity responsible for paying the undistributed income claim is the SK Trust. By contrast, from the estate's perspective, the claim is owed to the estate to remedy the failure of the trustees to distribute income from the ten properties to Pearl during her lifetime. In other words, the claim is "*property* to be included in the gross estate"—not an expense of the estate. *Est. of Kalikow*, 2023 WL 2234426, at *8 (emphasis added). That conclusion remains even though the liability is borne by an entity that held assets included within the taxable estate.

Petitioners acknowledge that the SK Trust "is a separate and distinct legal entity from KFLP with its own assets and liabilities." Petitioners' Br. 38. As such, the SK Trust may be entitled to deduct the liability on the SK Trust's own income tax return. But the

8

issue before the Tax Court was the value of the gross estate, and the estate did not owe a liability to itself. The Tax Court appropriately declined to take a position on whether the SK Trust would be entitled to a deduction on its own return. *See Est. of Kalikow*, 2023 WL 2234426, at *8 n.18.

As a last effort to avoid the tax consequences of the settlement, Petitioners argue that the Tax Court's decision will amount to double taxation. They contend that because Pearl's gross estate includes both the settlement for the undistributed income and the underlying assets held in the SK Trust, the same amount is taxed twice. Setting aside whether this assertion has merit, we need not address it because it is entirely theoretical on this record. As Petitioners concede, "an estate tax will not be charged twice." Petitioners' Br. 50–51. That is because only the underlying assets will be taxed as part of the estate. The settlement payment is part of Pearl's residuary estate, which she bequeathed to the Sunshine Foundation. Accordingly, the estate will receive a charitable contribution deduction for the amount of the settlement payment rather than it being taxed at all. *Est. of Kalikow*, 2023 WL 2234426, at *7.

We have considered Petitioners' remaining arguments and conclude they are without merit.

\*     \*     \*

For the foregoing reasons, the judgment of the Tax Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court